ALBERT N. ORCUTT, APPELLANT, V. JAMES H. MCGINLEY ET AL., APPELLEES; ALFALFA IRRIGATION DISTRICT, APPELLANT.

FILED JULY 11, 1914.   No. 18,011.

1. Judgment: RES JUDICATA: IRRIGATION BONDS.   Where the complainant, one Thomas, filed his bill in the circuit court of the United States, alleging that he was a citizen of the state of Iowa, a taxpayer in Keith county, Nebraska, and that Keith county, its treasurer, the board of county commissioners thereof, and the board of directors of the Alfalfa Irrigation District, and said Alfalfa Irrigation District were proper parties defendant to the bill, and setting forth that W. O. Rogers, one of the defendants, had received certain of the bonds of the district in payment for work done in the construction of a ditch for said irrigation district, and that Elizabeth O. Rogers had also received certain of the bonds in payment for certain addi-

tional work which she had done on the said ditch, and it further
appeared that one M. S. Collins, who was then an owner of certain
lands mentioned in the bill as being within said district, sought to
be protected from an assessment and levy of taxes to pay said bonds,
and that said Collins and the other landowners in the district had
assented to and acquiesced in the construction of the said ditch
and the delivery of the bonds, and had accepted the benefit to their
lands arising from the construction of said works, and on the trial
it was held by the said United States circuit court that the said
bonds were void in the hands of the said contractors to whom they
had been delivered, and they were ordered to be canceled, and there-
after said cause was appealed to the United States circuit court of
appeals for the Eighth judicial circuit, where the judgment of the
said United States circuit court was reversed and the said bonds
declared valid in the hands of such contractors, and thereafter the
plaintiff in this case, one Orcutt, filed his petition in the district
court for said Keith county, in which he alleges that he is a taxpayer
in the said irrigation district, and that he owns the same lands de-
scribed as the property of said Collins, and sets up substantially the
same facts that were adjudicated in the United States circuit court
and in the United States circuit court of appeals, and makes the
said officers of said county and the said Alfalfa Irrigation District
and its officers parties defendant, and introduces evidence tending
to prove the same facts shown at the former trial, it will be held in
this court on appeal that the case is res judicata, and that the new
plaintiff may not, by reason of the fact that he is a new purchaser
of the lands of said Collins in said district, become entitled to main-
tain his action and to relitigate the facts in said case.

2. **Waters:** Irrigation Bonds: Validity. "Where an irrigation dis-
trict, organized under the laws of a state and expressly authorized
to issue bonds, sells the same to the highest bidder after advertise-
ment, and to use the proceeds for the construction of irrigation works,
issued bonds which it had voted at par directly to a contractor in
payment for work which he had performed, its action was at most
no more than an irregular exercise of its power, and, where neither
the district nor any taxpayer questioned the validity of the bonds
until eight years after their issuance and after the right of the con-
tractor to maintain an action at law to recover for his work was
barred by limitation, a subsequent purchaser of property in the dis-
trict cannot then maintain a suit to have them declared void be-
cause of such irregularity." *Rogers v. Thomas,* 193 Fed. 952.

3. **Equity:** Laches. Courts of equity in cases of concurrent jurisdic-
tion usually consider themselves bound by the statute of limitations
which governs courts of law in like cases.

4. **Judgment:** Conclusiveness: Municipal Corporations. A judgment
against a municipal corporation is equally conclusive upon such

Orcutt v. McGinley.

corporation and its taxpayers. *Owens v. City of South Omaha*, 2 Neb. (Unof.) 466.

APPEAL from the district court for Keith county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hoagland & Hoagland* and *J. G. Beeler*, for appellants.

*A. H. Burnett, Brome & Brome* and *Wilcox & Halligan*, contra.

HAMER, J.

This is an action brought by Albert N. Orcutt, the plaintiff, and now one of the appellants, against James H. McGinley, the county treasurer of Keith county, the Alfalfa Irrigation District, the First National Bank of North Platte, and others. We will omit a statement of the contents of the pleadings, giving only such parts as may seem necessary to a general understanding of the case.

The plaintiff alleges the ownership of certain land within the Alfalfa Irrigation District, part of which he asserts may not be irrigated. It is his purpose (1) to set this land outside of the district, (2) to cancel the irrigation taxes against the plaintiff's land for the year 1896 to and including 1909 because of certain alleged irregularities in the issue of the bonds, (3) to cancel the irrigation bonds issued by the Alfalfa Irrigation District of the date of July 1, 1895, in the sum of $22,000, also, to enjoin the different owners of such bonds from asserting any claim against the district and against the plaintiff's land on account of such bonds. The Alfalfa Irrigation District was formed in the year 1895. On May 14, 1895, the petition was filed in the office of the county clerk of Keith county looking to the organization of the "Alfalfa Irrigation District." The boundaries of the proposed district were set forth in the petition. On June 8, 1895, an election was held, and the district was declared to be organized. On July 13, 1895, there was an election to issue $22,000 of the bonds of the district for the construction of irrigation works, said bonds to mature in 20 years from their date.

Before any of the bonds of the district were issued and before any construction fund was created for the building of an irrigation canal, the defendant W. O. Rogers, on or about August 21, 1896, submitted a bid in writing for the construction of the canal, and the same was let to him at 8 cents a cubic yard payable in bonds. The board accepted his bid and entered into a contract with him to deliver the bonds of the district in payment for the labor and at the rate of 8 cents a cubic yard, and thereafter delivered the bonds of said district from November, 1896, until some time in 1898. In August, 1895, a special proceeding was instituted in the district court for Keith county, Nebraska, by the board of directors of the said district, in which a confirmation of the action of the inhabitants of the district in organizing and voting and issuing the bonds was sought. The validity of the organization of the district was challenged, as also its right to issue the bonds. On the 31st day of August, 1895, a decree was entered in that proceeding in the district court for Keith county finding and adjudging that the said Alfalfa Irrigation District was lawfully organized, and the bonds issued as the law directed. There was an appeal from this judgment. This court affirmed the decree of the district court, and the bonds were declared to be valid obligations of the said Alfalfa Irrigation District. *Board of Directors of Alfalfa Irrigation District v. Collins*, 46 Neb. 411.

After the decree of the district court confirming the organization of the district, the then officers of the district, M. A. Daugherty, president, and H. C. Anderson, secretary, signed up and held in the office of the secretary the $22,000 of bonds, being the same bonds offered in evidence in the confirmation suit. On the 18th day of September, 1896, the said Alfalfa Irrigation District entered into a contract with said W. O. Rogers, by which he (Rogers) agreed to excavate the canal under the supervision of the engineer employed by the district. W. O. Rogers died in March, 1898. Prior to his death he had constructed the canal, and his work had been accepted by the district and

approved by its engineer. At the time of his death he was the owner of $14,000 of the bonds. These bonds became the property of his widow and minor children, who are appellees in this case. In the spring of 1898 a contract for an extension or completion of the said irrigation system was entered into by the said Alfalfa Irrigation District with the appellee Elizabeth O. Rogers, the widow of W. O. Rogers. She performed her contract with the district and received from it bonds to the amount of $3,100. From the time of the issuance of these bonds down to 1906 the district made assessments and levied taxes upon land in the district for the purpose of paying interest on these bonds. The name of W. O. Rogers was written on the bonds as payee. The evidence shows that Rogers authorized the bonds issued to be destroyed and new bonds to be issued payable to bearer. The new bonds in the form in which they are now held by the defendant Rogers were executed by the then officers of the district. The new bond issue of $22,000 was printed by order of the officers, bearing date July 1, 1895, and the bonds were signed in the name of the district by the persons who were the officers thereof. The said bonds with the coupons thereto attached were disposed of by the officers of the district for labor performed on the ditch. It is not denied that the ditch was constructed. It is not denied that water was used in the ditch and was applied by the irrigators. Elizabeth O. Rogers and her children own of the bonds issued about $17,500.

On September 4, 1906, William H. Thomas, a citizen and resident of the state of Iowa, began a suit in the circuit court of the United States for the district of Nebraska against the last named appellees and the bondholders, the Alfalfa Irrigation District, the county of Keith, and the officers of the irrigation district charged with the management of its affairs, and the county treasurer of the said county of Keith. The purpose was to enjoin the district and the officers of the county from levying taxes upon the land in the district to pay the interest on these bonds

and to require the bondholders to surrender their bonds
for cancelation. In the suit it was alleged that the said
Alfalfa Irrigation District was not properly organized;
that the statutory notice was not published in a proper
manner; that the boundaries of the district were improp-
erly changed; that the notice of the election was not pub-
lished as required by law; that the election was not held
within the limits of the proposed district; that the propo-
sition submitted was defective because it did not set forth
the terms and conditions of the same; that no estimate had
been made of the amount of money necessary to construct
the canal. The proceeding in the district court to declare
the district organized, and which had been affirmed by this
court, was assailed because of the lack of proper notice
and because the decree of the district court had been ob-
tained by collusion and fraud; that no construction fund
had been created by the sale of the bonds at the time the
contract was made with Rogers; that the contract made
with Rogers contemplated that he should be paid for his
work in bonds and not in cash; that the bonds delivered to
him and devised to his widow and children were executed
and delivered by the said Alfalfa Irrigation District in
payment for the work performed by him under the said
contract. There were the same averments respecting the
contract with the defendant, Elizabeth O. Rogers. Similar
averments were made respecting the portions of this issue
of $22,000 of bonds not held by the appellees, and that the
district court had been guilty of a large number of irreg-
ular acts in and about the levying of taxes and the pay-
ment of interest on said bonds. The plaintiff in that suit,
as a landowner of the district, sought to relieve his land
from the payment of taxes levied and assessed against it,
and to have the bonds declared void and surrendered up
and canceled.

The permanent relief sought in the said bill of com-
plaint was an order restraining and enjoining the said
James H. McGinley, county treasurer of said county of
Keith, from collecting any of said taxes upon lands of the

complainant, William H. Thomas, in said irrigation district for the payment of principal and interest upon said bonds, and restraining and enjoining the directors of said Alfalfa Irrigation District and their successors from levying or certifying any amounts as interest upon the said bonds or the principal thereof, or any part thereof, to be charged as taxes upon the lands of the complainant in said irrigation district, and restraining and enjoining the said Henry L. Gould, Charles Sautters, and James Burns, county commissioners of said county of Keith, and their successors in office, from assessing or levying the amount of principal or interest on said bonds, or causing the same to be charged as taxes upon the lands; that upon a final hearing the said injunction be made perpetual; and that it be decreed by the court that the taxes aforesaid levied upon and against said lands of the complainant in said irrigation district are void, that the same be canceled; and that it be decreed that said bonds and the coupons attached thereto are void and of no effect, and that the same be canceled; and that the said James H. McGinley, treasurer of said county of Keith, and his successors in office, be by the said decree ordered to cancel the said bonds and coupons and taxes upon the books of the said county of Keith; and that the title of the complainant to the lands aforesaid be quieted in said complainant free from any lien of taxes charged against said lands for the payment of interest upon said bonds and otherwise; that the complainant have such other and further relief in the premises as the circumstances of the case require and as may be just and equitable.

To the foregoing bill of complaint of the said William H. Thomas there were filed answers of the Alfalfa Irrigation District, Elizabeth O. Rogers, Elizabeth O. Rogers as guardian of Erwin F. Rogers and Hazel D. Rogers, John W. Welpton, Charles P. Ross, Exchange Bank of Ogalalla, and the First State Bank of Ogalalla, and others, which denied the material things alleged therein, and pleaded the validity of all the proceedings and of the bonds.

96 Neb. 40

The case came on for trial on the said bill of complaint and the answers thereto in the United States circuit court for the district of Nebraska, before the Honorable William H. Munger, district judge. The case was determined and a judgment rendered therein on the 18th day of November, 1908, declaring the bonds issued and not in the hands of innocent purchasers to be void. The cause was appealed to the circuit court of appeals, and on or about the 24th day of November, 1911, that court rendered its decree in said case, reversing the judgment of the United States circuit court. It is said in the opinion of the circuit court of appeals:

"The record shows that the lands mentioned in the bill were purchased by the appellee from one M. S. Collins on the 14th day of July, 1906, *nine years after the bonds had been delivered to W. O. Rogers and more than seven years after the bonds were delivered to Elizabeth O. Rogers under their contracts.* During all of this time Collins, the then owner of the lands mentioned in the bill, as well as all other landowners in the district, assented to and acquiesced in the construction of the irrigation ditch, the sale of the bonds, accepted the benefits to their lands arising from the construction of their works, Collins being, as the record shows, the first man to take water from the ditch and apply it to his land. In addition to this, the record further shows that for three years he was an officer of the irrigation district, and necessarily was thoroughly familiar with the entire transaction. During all of that time the validity of the bonds was not questioned by the irrigation district or by any taxpayer therein. Neither is it suggested in the pleadings that the price agreed to be paid for the work was excessive, or that there was any failure to complete the project in compliance with the terms of the contract between Rogers and the irrigation district. * * * After an advertisement for bids for the sale of bonds, and no bids having been received, the irrigation district on September 18, 1896, entered into a contract with Rogers for the construction of the irrigation works,

wherein the irrigation district agreed to pay 8 cents per cubic yard for the excavation, and no reference is made to the bid, nor is there any provision in the contract requiring the district to give, or Rogers to accept, bonds in payment, so that upon the face of the contract the payments were to be made in cash. The record shows, however, that the payments were made in bonds, he taking the bonds at par value. From the fact that in the bid Rogers offered to do the work for 8 cents per cubic yard payable in bonds, and that the contract provided for the payment of 8 cents per cubic yard, and the further fact that bonds were delivered in payment for the work done under the contract, it is insisted that it affirmatively appears from the record that the board of directors accepted the second proposition contained in the bid, and that the contract must be read as though that provision was contained therein, and, further, that, as a construction fund was not created by the sale of the bonds of the district for cash in the manner contemplated by the statute, the bonds are void." *Rogers v. Thomas,* 193 Fed. 952.

We will hereafter refer to the argument of the learned judge who delivered this opinion. A decree was rendered by the district court of the United States for the district of Nebraska in conformity with the opinion and memoranda dismissing the bill of complaint.

The validity of the said bonds has been determined in favor of the bonds, and the proper organization of the said Alfalfa Irrigation District has also been determined in favor of the district. Although said bonds have been declared to be valid by the said courts and the said Alfalfa Irrigation District has been declared to be properly organized under the laws of the state of Nebraska, yet the said plaintiff in this case, regardless of the judgments and decrees of the said courts herein recited, seeks to relitigate all the matters heretofore determined and to have such matters determined adversely to the validity of said bonds and against the proper organization of said district, and to that end recites in his petition the facts alleged in the

pleadings of the cases mentioned, and prays for the relief
sought in said petition and in the said bill of complaint.
The thing sought to be done is to try the several matters
adjudicated all over again the same as if said proceedings
and trial had not been had and said judgment and decree
had not been rendered. The plea of *res judicata,* if good, ob-
viates the necessity for an examination of the other ques-
tions involved, and must be conclusive upon the parties,
even though we do not agree with the reasoning of that
opinion upon which the judgment 's based, and even though
we might decline to follow the decision in the case as an
authority.

It is urged by the plaintiff, Orcutt, that such decree is
not binding on him, first, because he was not a resident
of the district, and was not then an owner of land within
the "Alfalfa Irrigation District;" and he urges, second,
that the matter is not *res judicata* as to the district or to
the landowners within it because the owner of the bonds,
the defendants Rogers, were sought to be enjoined along
with the district, and the district asserted no rights adverse
to the defendants Rogers. Considering the first ground
of objection—that is, that the judgment is *res judicata* as
to the plaintiff because he was not a party to it—it is a
fundamental rule that the *inhabitants or taxpayers of a
municipality are bound by any judgment against the mu-
nicipality.* This arises out of the necessity of government,
and because, if it were not so, a judgment against a mu-
nicipal corporation could never be made binding upon the
inhabitants of the municipality. If a different rule pre-
vailed, then, when new inhabitants or new taxpayers be-
came interested in the city, the whole matter could be liti-
gated over again. Nothing would be settled by a trial.
1 Herman, Estoppel and Res Judicata, sec. 155, uses this
language: "Thus where the validity of a tax is deter-
mined, without fraud, in an action against the officers of a
county to compel its collection that decision is a bar to
an action by the taxpayers of such county to enjoin its
collection." The plaintiff in this case, Orcutt, and all the

other taxpayers of the district are bound by the decree of the circuit court of appeals. The matter becomes *res judicata* by reason of the decree of that court, and whether we would adopt its reasoning or not. The syllabus reads: "(1) Where an irrigation district, organized under the laws of a state and expressly authorized to issue bonds, sells the same to the highest bidder after advertisement, and to use the proceeds for the construction of irrigation works issued bonds which it had voted at par directly to a contractor in payment for work which he had performed, its action was at most no more than an irregular exercise of its power, and, where neither the district nor any taxpayer questioned the validity of the bonds until eight years after their issuance and after the right of the contractor to maintain an action at law to recover for his work was barred by limitation, a subsequent purchaser of property in the district cannot then maintain a suit to have them declared void because of such irregularity. (2) Courts of equity in cases of concurrent jurisdiction usually consider themselves bound by the statute of limitations which governs courts of law in like cases, and this rather in obedience to the statute than by analogy."

In *Owens v. City of South Omaha*, and *Shannahan v. City of South Omaha*, 2 Neb. (Unof.) 466, it is said in the syllabus: "(1) A judgment recovered in an action upon a judgment cannot be collaterally assailed upon the ground that the last mentioned judgment was fraudulently obtained. (2) A judgment against a municipal corporation is equally conclusive upon the city and its taxpayers." In the language of commissioner Ames, who prepared the opinion: "The questions involved in both cases are identical, and for these reasons both will be disposed of as one and in a single opinion." Case No. 10,989 was for a writ of mandamus to compel the levy of a tax by the city of South Omaha upon the taxable property within that city, and the issuance of warrants to pay a certain judgment rendered in the district court for Douglas county on the 11th day of April, 1896, in favor of one Catherine Dris-

coll and against said city for the sum of $2,500 and costs. In case No. 10,988, John D. Owens and others appeared as plaintiffs and appellees to enjoin the levy of a tax, the issuance of warrants, and the payment of the same judgment. In both cases it appears that prior to the 11th day of April, 1896, there was pending in the district court for Douglas county an action by Catherine Driscoll against the city of South Omaha to recover $3,000 damages for personal injury alleged to have been sustained because of the negligence of the city; that on said 11th day of April, 1896, the city of South Omaha, defendant, by an attorney employed by the mayor and city council and specially authorized resolution, confessed judgment in said action in favor of the plaintiff therein, Catherine Driscoll, in the sum of $2,500; that shortly after the rendition of said judgment there was filed in said cause an assignment of said judgment to Mary G. Madden; and that soon after that Catherine Driscoll died intestate, and that John M. Shannahan was appointed administrator of the estate of said Catherine Driscoll, deceased, and qualified and entered upon the duties of his office. Case No. 10,989 starts out with an application for a writ of mandamus to compel the levy of a tax by the city and the issue of warrants. The thing contemplated in that case was the payment of a judgment against the city. Case No. 10,988 was brought to enjoin the levy of a tax, to enjoin the issue of warrants, and to enjoin the payment of the same judgment. Catherine Driscoll had sued the city for damages sustained because of a personal injury alleged to have been occasioned through negligence of said city. The attorney employed by the city confessed judgment in favor of the plaintiff and against the city for $2,500. Right afterwards Catherine Driscoll, the plaintiff, assigned her judgment to Mary G. Madden, and the assignment was filed in the cause. Then Catherine Driscoll died, and John M. Shannahan was appointed administrator of her estate. He commenced a suit in equity as such administrator in the district court for Douglas county against said city of

South Omaha and said Mary G. Madden, alleging that the assignment to the latter had been obtained by fraud of Catherine Driscoll's attorney acting in collusion with the said Mary G. Madden. By his prayer Shannahan sought the payment to himself as the administrator of the estate of said Catherine Driscoll of the full amount of said judgment. The district court decreed the city should pay one-half of the full amount to Shannahan as administrator. The city of South Omaha did not enter its appearance, and Mary G. Madden answered that she had sold her interest to Thomas Hoctor, who appeared and was substituted in her place as a defendant. He alleged purchase from Mary G. Madden, denied all allegations of fraud in procuring the assignment from Catherine Driscoll, and prayed for a dismissal of the plaintiff's petition and for equitable relief. Then Shannahan, as administrator, and Hoctor, on his own account, stipulated that the city should pay half of the judgment and interest to each. There was a default taken against the city. Before the levy of taxes for 1898, Shannahan, as administrator, and Hoctor, in his individual capacity, made demand upon the city to levy the tax necessary to pay the judgment and to issue warrants to Shannahan for one-half, and to pay the same. There was a failure to comply with the demand, and Shannahan commenced the mandamus case No. 10,989, setting forth that the city of South Omaha was a city of the first class, having between 1,000 and 25,000 inhabitants; that it had a mayor and members of the city council and a city clerk, all of whose names were set forth, the rendition of the judgment, the filing of the assignment, the final decree in the equity suit against the city and Mary G. Madden, the intervention and substitution of Thomas Hoctor, the entry of the decree in that suit relating to said Shannahan in his capacity as administrator, and finding him entitled to one-half of said judgment, that said decree was not appealed from and was conclusive upon said city and said Hoctor, and that demand had been duly made for the levy of said tax and the issuance of said war-

rants according to the terms of said decree. Upon the petition being filed, an alternative writ issued commanding the said city through its proper officers to provide for the payment of said judgment or show cause why a peremptory writ should not issue.

The officials of the city answered in the mandamus case admitting the corporate character of the city, the official capacity of the defendants, the rendition of the judgment in favor of Catherine Driscoll, the assignment of the same to Mary G. Madden, the rendition of the decree in favor of Shannahan, as administrator, in the equity suit brought by him to set aside the assignment and compel payment to himself, admitting said decree was in force, but denying that it was binding upon the city of South Omaha, upon the grounds that the original judgment against the city in favor of Catherine Driscoll was obtained by fraud, and that the decree in the equity case which adjudged one-half of the judgment to be paid to Shannahan, administrator, was also obtained by fraud and before the case had come on for hearing. At the time of filing the answer in the mandamus case, the city attorney of South Omaha prepared and filed the petition of Owens and others against the city and its officials and Shannahan, administrator, for the purpose of enjoining the payment of the Driscoll judgment. That petition alleged the same grounds of fraud in respect to the original judgment against the city, and the decree in the equity case which required the city to pay one-half of the judgment to Shannahan as administrator, and also sought to have the judgment in the law action and the decree in the equity case set aside and held for naught, and the judgment perpetually enjoined. After reversing these two judgments, the cases were brought to this court, one upon appeal and one upon petition in error.

It is said in the opinion: "The only question which we think it is necessary to consider or decide is whether the city of South Omaha and its taxpayers were bound by the decree of October, 1897, in the case of *Shannahan v. City of South Omaha.* The petition in that case pleaded the

judgment rendered in favor of Mrs. Driscoll, and made that judgment the basis or cause of action in the equity suit. It also alleged the assignment to Madden and charged that that assignment was procured by fraud. It then prayed that the assignment be set aside; that the city be adjudged and decreed to pay the full amount of the judgment to the plaintiff in his capacity as administrator; that he recover costs; and for such other and further relief as he may be in law and in equity entitled to. * * * The decree, among other things, provided: 'It is further considered, adjudged and decreed by the court that the said defendant, the city of South Omaha, pay to the plaintiff herein in his capacity as administrator, or to such assignee of the plaintiff as the county court of Douglas county may, by proper order of distribution of the assets of the estate of said Catherine Driscoll, direct and order, one-half of the full amount of the aforesaid judgment in the said case of *Catherine Driscoll v. City of South Omaha,* together with legal interest thereon from the date of the rendition of the judgment.'" The opinion continues: "Whether there was or was not fraud in the obtaining of the original judgment in the law action is *not open to inquiry* if the decree in *Shannahan v. South Omaha* is valid." The opinion then cites Freeman, Judgments (4th ed.) sec. 215, where the rule is thus stated: "The entry of a judgment or decree establishes, in the most conclusive manner, and reduces to the most authentic form, that which had hitherto been unsettled, and which had, in all probability, depended for its settlement upon destructible and uncertain evidence." In the opinion 1 Herman, Estoppel, sec. 52, is cited, where he says: "When judgment is taken by default, the adjudication will be conclusive of the existence and validity of the right or demand for which suit is brought." *Corcoran v. Chesapeake & Ohio Canal Co.,* 94 U. S. 741, is also cited, where it is said the supreme court of the United States held that, where a party has an opportunity to make a defense, the decree of the court is conclusive upon him *upon every defense*

*that he might have made to the* matters alleged against him. It is further said in the *Shannahan* opinion: "When the suit of Shannahan against the city of South Omaha was commenced in the fall of 1896 the basis of the relief sought was the judgment previously rendered in favor of Mrs. Driscoll, and it was so alleged in the petition. The relief sought was a decree directing its payment to Shannahan, administrator. * * * If there was any reason, grounded on fraud, on account of which the judgment could have been attacked and held invalid, the city should have made answer to Shannahan's petition and questioned the legality of the judgment, and sought to have it avoided as being obtained by fraud. Instead of doing so the city made no appearance whatever. * * * The decree was according to the allegations of the prayer of the petition, and that decree forever afterward bound the city as to the validity of the original judgment and cut off all defense based upon any fraud perpetrated in obtaining it." The opinion further says: "There can be no question that the judgment is equally conclusive upon the city and its taxpayers. A judgment against a municipal corporation would be of no value, if matters of defense to the action, which were available to the city before its rendition, might be relitigated at the suit of individuals."

This would seem to be conclusive in the instant case. There are two judgments, one rendered in the district court and affirmed by the supreme court, the other rendered in the United States circuit court of appeals. If the case is not fully adjudicated now, it never can be. Any new settler coming into the district and purchasing land within it may continue to enjoin the proceedings if the present action can be maintained. This would be a travesty on the efficiency of judicial proceedings. It would leave the decree of a court without the power of settlement and adjustment.

Taking up the second reason urged by plaintiff for holding the judgment in this case of *Rogers v. Thomas, supra,* not to be *res judicata* of the right of the district, an exam-

ination of the record discloses that no issue adverse to the
interest of the Rogers family was actually asserted by the
Alfalfa Irrigation District. The district in that case did
not deny the validity of the bonds, but asserted that the
same were valid, making the same defense made by the
Rogers family. The interest of the district and the inter-
est of the Rogers were adverse. The reasons for holding
the bonds invalid alleged by said Thomas, the complainant,
in his bill of complaint, asking an injunction against the
collection of the bonds, could have been alleged by the an-
swering district. Apparently the then officers of the dis-
trict did not care to repudiate what they believed to be
just obligations of the district. It is a well-known rule
that a judgment is not only *res judicata* of those things
actually litigated, but of all things which might properly
have been litigated. If one has a defense which he neglects
to make, it is at his peril, and this is as true where adverse
interests exist between codefendants as between plaintiff
and defendant and the rights of the defendants are involved
in the determination of the controversy. It is open to the
district to assert the invalidity of the bonds; the suit was
one in equity. The rights of all parties could be deter-
mined. The Alfalfa Irrigation District was a necessary
party. The steps taken to organize the district were pre-
sented to the court and held sufficient. If under the issues
presented it was necessary to consider these alleged irreg-
ularities, the litigation could have been completely deter-
mined without making it a party. The rights of the Rog-
ers family against the district were to be determined as
well as the rights of Thomas. Under the issues it was
necessary for the court to find whether the requisite steps
to organize the district as a district had been taken. This
fact was found affirmatively. It was necessary to deter-
mine whether the district had power to issue the bonds.
It was determined that it had such power. It was neces-
sary to determine whether the statute of limitations was a
bar to the action. It was determined that neither the
district nor a taxpayer in the district could maintain the

action. This was an adjudication against the district as well as against Thomas because the question might have been litigated by the district even if it were not such an issue as could have been determined by the district because it had an opportunity in a forum of competent jurisdiction in a case where the issues made it proper to present every reason in existence against the validity of the bonds held by the Rogers.

Courts of equity have the power to determine the rights of codefendants as between themselves as well as with reference to the complainant. Ordinarily, if the plaintiff in such a case waits until the contractor doing the work is barred by the statute of limitations and may not successfully bring an action to recover for the work done, then he is in no condition to assert that the defendant is without the right to hold the bonds.

The evidence sustains the finding, and judgment of the district court. The judgment is therefore

AFFIRMED.

SEDGWICK, J., concurs in the conclusion.