OMAHA ROAD EQUIPMENT COMPANY, APPELLANT, V. THURSTON COUNTY, APPELLEE.

FILED NOVEMBER 20, 1931. No. 27825.

Andrew M. Morrissey and Arthur F. Mullen, for appellant.

Robert G. Fuhrman and Harold R. Jordan, contra.

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Dean, J.

From an order of the Thurston county board of commissioners disallowing a claim of the Omaha Road Equipment Company, in the sum of $11,838.50, for road machinery alleged to have been furnished and delivered to the county, the plaintiff company appealed to the district court. Upon submission the court found generally in favor of the county and against the company and decreed that the evidence was insufficient to prove that the company had offered to accept a return of the money and equipment and take back the machinery alleged to have been sold to the county. The court also found that section 1040, Comp. St. 1922, now section 26-734, Comp. St. 1929, does not contravene any constitutional limitations placed upon the legislature, nor does the act limit the jurisdiction of the courts in the premises. From the judgment so rendered the plaintiff company has appealed.

The record discloses that the following machinery was delivered by the plaintiff company to Thurston county, namely, on or about March 28, 1927, one caterpillar 60 tractor engine, designated P. A. 1206, valued at $5,000; one caterpillar 60 tractor engine, designated P. A. 1651, valued at $5,000; and, on or about August 9, 1927, one caterpillar 60 tractor engine, designated P. A. 2007, and also valued at $5,000; and, on or about May 16, 1927, one Russell elevator grader, valued at $1,840. Upon all of the above machinery the freight charges were paid by the plaintiff. The value of the property so delivered to the defendant county totals the sum of $17,438.50, and it is conceded that the county has made the following payments to the plaintiff upon the machinery, namely: Three old tractor engines, valued at $1,800, were accepted in trade; two county warrants, each in the sum of $1,250; a county warrant for $600; and another county warrant for $700, making a total sum of $5,600 which was paid by the defendant to apply on the machinery so delivered by the

plaintiff. And the company contends that a balance of $11,838.50 remains unpaid.

It appears that the defendant county has retained the machinery so delivered by the plaintiff and that such machinery has been used by the county in working on the public roads therein. In respect of the machinery sold by the plaintiff and purchased by the defendant, the president of the company testified that he "offered them (the county commissioners) any kind of a proposition to get" a return of the machinery, but that the county refused to make such return to the company. The president also testified that his company received no commission or profit whatsoever, arising from the sale of the machinery to the county, but that the machinery was sold to the county at the regular established factory list price.

The contention of the county is that the facts and the parties in the present action are identical with those in a former action wherein the action was dismissed, and that the judgment dismissing the action is a bar to the present action. But we do not agree with this contention. In the judgment entered in the former action, the court found that only $3,031.50 of the aggregate amount sought had then been presented to the county board and by the board disallowed, and the court held that it was without jurisdiction to hear and determine the amount due, if any, in excess of the $3,031.50, above named. We think that, to come within the rule of *res judicata*, it must appear that the same facts were or, in due diligence, might have been presented or litigated in the former action, but where, as in the present case, the court held that it was without jurisdiction to hear and determine certain facts the rule does not apply.

The county contends that at the time the road machinery was delivered the amount of money on hand in the county treasury was less than the amount due on the machinery and that the annual estimate and appropriation of the board for the year 1927 was insufficient to pay for the material. The county also contends that the contracts under which the machinery is alleged to have been pur-

chased are void from the fact that such action is an apparent attempt to bind the county to the payment of instalments out of future levies and that the orders for the machinery were the acts of individual members of the board and not that of county commissioners as such officials.

We think the county had authority to enter into the contracts for the purchase of the machinery here in question. As noted above, the machinery was purchased on or about the following dates, namely, March 28, May 16, and August 9, 1927. From the record it appears that, on or about January 6, 1927, before the purchase of the machinery, an estimate of expenses for the year 1927 was made by the board of county commissioners. Among the items listed in the minutes of the above meeting are estimates for "Supplies, $8,000," "Bridges, $40,000," "Commissioner Districts, $12,000," and "Road Districts, $12,000." And from the minutes of a subsequent meeting held July 5, 1927, it is disclosed that the following levies, among others, were made by the board, namely, "General Fund, $28,785.90," "Bridge Fund, $16,192.63," "Commissioner Districts, $8,-096.32," and "Road District Funds, $8,096.32." No express provision is contained in the statute designating from what funds certain amounts as in the present case shall be paid. And we have held: "It is not unlawful for a county board, after estimate made and prior to its meeting as a board of equalization, to anticipate the levy for the current year, and contract an indebtedness upon a particular fund within the estimate, although there is at the time no money in the treasury to the credit of such fund for the payment of the indebtedness, if in contracting such indebtedness the board remain within the limits prescribed by the Constitution and the statutes." *Austin Mfg. Co. v. Brown County,* 65 Neb. 60.

In *Argenti v. City of San Francisco,* 16 Cal. 255, it is held that where a "plaintiff, in making the improvements, relied on the validity of the contracts and the obligation of the city to pay, as therein provided; the city authorities were fully informed of these facts, took no steps to repudiate the contracts, or to inform plaintiff as to her disposition

to pay: Held, that plaintiff can recover on the contracts, although there is no evidence that the officer signing them was expressly authorized; that the silence of the city authorities, under the circumstances, was equivalent to a direct sanction of the acts of such officer, and estops the city from denying his authority; that the city having acquiesced in the contracts from the commencement to the completion of the improvements, never questioning the validity of the contracts until she had received all the benefit to be had from their performance, it would be a fraud on plaintiff to permit her now to repudiate them."

And in *International Harvester Co. v. Searcy County,* 136 Ark. 209, the court, in commenting on a section of the statute there, holding that the county court had no power to let a contract to construct a bridge without an appropriation having been made therefor, made this observation: "If that was all there was in the present case, the judgment disallowing the claim would be right, because the contract for the purchase of the machinery was made by the county judge before an appropriation therefor was made by the levying court. After the appropriation for the road machinery was made the county retained the machinery and continued to use it. The county could not keep the machinery and use it for the benefit of the public and still defeat the claim for its purchase price."

In *Brown v. City of Atchison,* 39 Kan. 37, wherein a contract and certain bonds were held to be void, it was nevertheless held that the city must account for all benefits received and for which no equivalent had been rendered, "and this as nearly in accordance with the contract as the law and equity will permit."

To substantially the same effect is *Scott County v. Advance-Rumely Thresher Co.,* 288 Fed. 739, wherein the court likewise held that where certain road machinery was purchased without an appropriation having been made therefor, but where the county nevertheless used such machinery for a period of four years, such county "cannot escape liability therefor on the plea that the contract was made without authority." And it has been held that "Con-

tracts formally executed by the proper officers of the city by authority of its council, and not necessarily beyond the scope of its powers, will, in the absence of proof to the contrary, be presumed to have been made by lawful authority." *City of Lincoln v. Sun Vapor Street-Light Co.*, 59 Fed. 756.

In the present case the county is liable for the reasonable value of the road machinery which it purchased, retained, and used, where the county was clothed with power to purchase such machinery, notwithstanding the fact that the contract of purchase is unenforceable because the power was irregularly exercised. We think the county, in view of the facts, is estopped to deny liability in respect of the purchase of the machinery. Other assignments of alleged error have been urged in the brief of plaintiff; but, in view of our conclusion, we do not find it necessary to discuss them.

The judgment is reversed, with directions to enter a judgment in favor of the plaintiff in conformity with the views set forth herein.

REVERSED.