MERVYN J. WARREN, APPELLEE, V. COUNTY OF STANTON, APPELLANT.

15 N. W. 2d 757

FILED OCTOBER 6, 1944. No. 31767.

*Robert R. Moodie* and *Walter D. James,* for appellant.

*Gross & Crawford, Crofoot, Fraser, Connolly & Stryker* and *Abbott, Dunlap & Abbott, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and CHAPPELL, JJ.

CARTER, J.

This is an action by Mervyn J. Warren, plaintiff, against the county of Stanton, defendant, to recover a judgment on 193 warrants issued by the county to the Standard Bridge Company and registered for nonpayment in the years of 1921 and 1922. The trial court allowed a recovery on the theory that defendant was estopped to assert the defenses pleaded. The county appeals.

The record shows that in the years 1919, 1920, 1921 and 1922, floods, high water and other causes required the replacement of many bridges in Stanton county. The county thereupon entered into numerous "unit price" contracts for the construction and repair of a large number of bridges with one Robert Z. Drake, doing business as the Standard Bridge Company. The total contract price for the bridges constructed and repaired under the contracts thus made amounted to $617,607.77. During the period in which the work was being done the county levied taxes for all bridge purposes in the amount of $140,594.84, and the amount collected on these levies was paid on the indebtedness. In addition thereto, a levy of $34,311.69 was made in 1921 for what was designated as "Old Indebtedness Fund." The money collected on this levy was used largely as partial payments on the indebtedness created by the foregoing bridge contracts.

During the progress of the work Drake presented five claims to the county board as follows: August 19, 1920,

$104,137.23; June 22, 1921, $87,623.72; July 14, 1921, $180,-336.75; January 24, 1922, $150,341.64; and September 16, 1922, $95,168.43. The first four claims were allowed and the amounts due thereon for which there was no money in the treasury for their payment were evidenced by warrants. A total of 1,089 warrants was issued, 247 warrants totaling $174,097.70 were drawn against the Bridge Fund and 842 warrants totaling $364,933.98 were drawn against the Old Indebtedness Fund. All warrants were registered in 1921 and 1922.

The fifth claim was disallowed by the county board and Drake appealed to the district court where judgment was entered thereon for $75,168.43. This judgment was subsequently paid in full. The present action was brought to recover the amount due on the unpaid warrants given in payment of the first. four claims filed.

The record further shows that each year, after the issuance and registration of the warrants against the Bridge Fund to and including 1938, levies were made and taxes collected for the payment of these warrants. In this manner all except 62 warrants in the amount of $77,765.90, including interest, were paid. Likewise, annual levies were made for the Old Indebtedness Fund to and including 1937 for the payment of outstanding warrants on that fund. In this manner all except 131 warrants in the amount of $161,-358.33, including interest, were paid. The judgment entered by the trial court against the county of Stanton was for these amounts.

It is the contention of the county that the action is barred by the statute of limitations, that the warrants sued upon were issued in violation and in excess of the power of the county to issue warrants, that the contracts upon which the claims were based and the warrants issued were *ultra vires*, that the warrants were issued in violation of section 5, art. VIII of the Constitution of Nebraska, and that a judgment in a former action was *res adjudicata* of the validity of the warrants in question.

The plaintiff by way of reply denied the allegations of

the anwer and alleged that the defendant is estopped to assert that the warrants sued upon were issued in violation and excess of the powers of the county to issue such warrants, that the issuance of such warrants was not in fact in violation and in excess of such power, that defendant is estopped to assert that the warrants were issued in violation of section 5, art. VIII of the Constitution, that the issuance of such warrants was not in fact a violation of any constitutional provision, and that a judgment procured in an action in the district court for Stanton county, Nebraska, wherein the Standard Bridge Company was plaintiff and the defendant, here, with others were defendants, constituted an adjudication of the validity of the warrants and is *res adjudicata* of all defenses pleaded by the defendant in the present suit.

With reference to the statute of limitations, the record shows that annual levies were made for the Old Indebtedness Fund to and including 1937. The record does not affirmatively establish a failure to levy taxes for the payment of registered warrants drawn on the Bridge Fund prior to August 1, 1936. Consequently, we find from the evidence that there was a failure for the first time to make a levy to pay registered warrants drawn on the Old Indebtedness Fund on August 1, 1938, and that the first failure to levy taxes to pay registered warrants drawn on the Bridge Fund was on August 1, 1936. This action was commenced on July 31, 1941. The applicable rule is that the statute of limitations does not begin to run against county warrants until after it appears that the taxes levied to create a fund for the payment of the warrants have failed and will continue to fail to produce funds for the payment of the warrants. *Daniels v. City of Gering,* 130 Neb. 443, 265 N. W. 416. In *Rogers v. City of Omaha,* 82 Neb. 118, 117 N. W. 119, the rule is stated as follows: "The statute of limitations does not commence to run against warrants issued by a municipal corporation, payable out of a special fund to be created, until such fund has in fact been created, and there is sufficient money in the fund with which to

pay the warrants." See, also, *Bacon v. Dawes County*, 66 Neb. 191, 92 N. W. 313. It is evident that the creation of a fund for the payment of these warrants failed when no levy was made in 1938 as to one and in 1936 as to the other. The failure occurred within five years of July 31, 1941, the date this suit was commenced. There being insufficient amounts in the respective funds on August 1, 1938, and August 1, 1936, to pay the warrants sued upon, and there being no evidence that the officers of the county had refused or neglected prior to that time to provide the funds to retire the warrants, the statute of limitations did not operate to bar the action.

The contention of the defendant that the warrants sued upon are absolutely void is based upon the claimed violation of the following constitutional and statutory provisions:

Constitution of Nebraska, art. VIII, sec. 5: "County authorities shall never assess taxes the aggregate of which shall exceed fifty cents per one hundred dollars actual valuation as determined by the assessment rolls, except for the payment of indebtedness existing at the adoption hereof, unless authorized by a vote of the people of the county."

Comp. St. 1929, sec. 26-116: "It shall be unlawful for the county board of any county in this state to issue any warrants for any amount exceeding the aggregate of eighty-five per cent of the amount levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same; nor shall it be lawful for the county board to issue any certificate of indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness against the county in excess of the tax levy for county expense during the current year; nor shall any expenditure be made, or indebtedness be contracted to be paid out of any of the funds of said county in excess of the amount levied for said fund."

Comp. St. 1929, sec. 26-117: "Each warrant shall specify the amount levied and appropriated to the fund upon which it is drawn, and the amount already expended of such fund."

Comp. St. 1929, sec. 26-118: "Any warrant drawn after eighty-five per cent of the amount levied for the year is exhausted, and where there are no funds in the treasury for the payment of the same, shall not be chargeable as against the county, but may be collected by civil action from the county board making the same, or any member thereof."

It is established beyond question that the constitutional provision cited and the provisions of sections 26-116 and 26-118, Comp. St. 1929, were violated when the warrants sued upon were issued. The warrants on their face evidenced the fact that sections 26-116 and 26-118 were violated at the time of their issuance. Defendant contends that the violation of these constitutional and statutory provisions renders the warrants absolutely void, *ultra vires* and unenforceable. Plaintiff contends that the issuance of these warrants was not *ultra vires*, and, at most, they were voidable only upon the taking of appropriate steps at the proper time, but the county having approved the claim, retained the benefits, acquiesced in the disposal of the warrants by notifying the holders thereof and calling upon them for presentment for payment in the order of registration as funds became available and by making annual levies for their payment for a long period of years, the county is now estopped to assert the illegality of the warrants.

It must be conceded that the county had the power to make contracts for the construction and repair of bridges within the county. The provisions of the Constitution and statutes cited recognize that power but seek only to provide limitations upon the exercise of the power. An *ultra vires* contract of a municipal corporation is one which the corporation has no power to make under any circumstances or for any purpose. A contract of a municipal corporation is *ultra vires* in its proper sense when the corporation has no

power under existing legislation to enter into such a contract. *Rogers v. City of Omaha,* 80 Neb. 591, 114 N. W. 833; *Stickel Lumber Co. v. City of Kearney,* 103 Neb. 636, 173 N. W. 595. It is within the general powers of a county to contract for the construction and repair of bridges, hence it cannot be said that the contracts are strictly speaking *ultra vires* although absolutely void because issued in excess of limitations imposed by constitutional and statutory law. The latter rule has not been departed from in this state and is amply supported by the following cases: *Grand Island & W. C. R. Co. v. Dawes County,* 62 Neb. 44, 86 N. W. 934; *National Life Ins. Co. v. Dawes County,* 67 Neb. 40, 93 N. W. 187; *State ex rel. Boxberger v. Burns,* 132 Neb. 31, 270 N. W. 656. We necessarily conclude that the warrants in suit are absolutely void, whether the liability was incurred under the emergency powers of the county board or otherwise, and being nonnegotiable instruments, an assignee acquires them subject to all defenses which were available against the original payee. *Union Nat. Bank v. Village of Beemer,* 123 Neb. 778, 244 N. W. 303.

Plaintiff urges that the county is estopped to assert that the warrants sued upon are void. It is elementary that an illegal and void contract cannot be made the groundwork of an estoppel. Such a situation is different from that in which a municipal corporation acts irregularly within the scope of its powers. In the latter case the municipal corporation, as well as corporations contracting with it, may be estopped to deny that it has complied with all legal formalities. But such is not the rule where the act is absolutely void. In the leading case of *Central Transportation Co. v. Pullman's Palace Car Co.,* 139 U. S. 24, 60, 11 S. Ct. 478, the court said: "When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact

have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws. * * *

" * * * 'nothing which has been done under it, nor the action of the court, can infuse any vitality into it;' * * * ." See, also, *Pennsylvania R. Co. v. St. Louis, Alton & Terre Haute R. Co.*, 118 U. S. 290, 6 S. Ct. 1094.

"A municipality cannot be estopped to aver its incapacity to make a contract by receiving benefits thereunder. That is, it cannot be made liable either on the theory of estoppel or implied contract, where it had no capacity to make the contract or where it was made in express violation of law." 3 McQuillin, Municipal Corporations (2d ed.) (Rev.) sec. 1358.

"If warrants are construed to constitute indebtedness, and the debt limit of the municipality has been exceeded at the time of the issuance of warrants, the municipality cannot estop itself by its conduct or otherwise to deny its liability when sued upon such warrants." 6 McQuillin, Municipal Corporations (2d ed.) (Rev.) sec. 2418.

This court has followed this principle. In *State, ex rel. Sorensen v. Plateau State Bank*, 126 Neb. 407, 253 N. W. 433, we said: "Where there is a positive law prohibiting the village treasurer from depositing village funds in any bank not designated by the board of trustees as a depository, the village is not estopped by any act done in violation of said law by the village treasurer."

In a somewhat similar case we said: "Void action by a city council in allowing the city clerk unlawful compensation and in ordering a city warrant to pay it, if positively inhibited by statute, does not have the effect of an appealable judgment, but is open to collateral attack and does not estop the city to seek redress for resulting damages by means of a suit on the official bond of the city clerk." *City of Scottsbluff v. Southern Surety Co.*, 124 Neb. 260, 246 N. W. 346.

It is the general rule that the doctrine of estoppel cannot be applied as against a municipal corporation to validate a contract which it has no power to make, or where it was made in express violation of a prohibitory law. See *Neisius v. Henry*, 142 Neb. 29, 5 N. W. 2d 291; *Village of Bellevue v. Sterba*, 140 Neb. 744, 1 N. W. 2d 820; *Paxton Irrigation District v. Conway*, 94 Neb. 205, 142 N. W. 797.

The defendant urges that a former judgment in the case of *State ex rel. Warren v. Raabe*, 140 Neb. 16, 299 N. W. 338, is *res adjudicata* of all issues involved in the present case. We do not think there is any merit to this contention. This suit was one in mandamus to compel the proper officers of the county to proceed to collect the funds necessary to pay off the warrants in suit in the present action. The court held that the action was not a proper remedy in that case and affirmed the judgment of the trial court in dismissing the suit. While we do not question that a final judgment rendered upon the merits of an application for a writ of mandamus may constitute the basis for a plea of *res adjudicata*, the rule has no application where the applicant misconceived his remedy and suffered a dismissal on that ground. In *Hoffman v. Silverthorn*, 137 Mich. 60, 100 N. W. 183, the rule is aptly stated as follows: "It does not follow, because the mandamus was denied, that the court passed upon the merits of plaintiff's application. That mandamus may have been denied because no case was made that appealed to the discretionary power of the court, because relator had a manifest legal remedy of which he could not be deprived, or because mandamus was not the proper remedy. If the mandamus was denied for either of these reasons, no authority need be cited to the proposition that that decision was not res judicata." See, also, *Fuller-Warren Co. v. Harter*, 110 Wis. 80, 85 N. W. 698; *Carter v. Schrader*, 187 Ia. 1245, 175 N. W. 329.

The plaintiff contends that the judgment obtained on the fifth claim filed was *res adjudicata* as to the validity of the warrants in suit and is a bar to the defense of invalidity asserted by the county. The record shows that the fifth

claim was disallowed on September 16, 1922, and an appeal promptly taken. When the transcript was filed in the district court on appeal, it contained not only the fifth claim, but also the four claims which had been previously allowed and on which warrants had been issued, the warrants in suit being a part thereof. A petition denominated a petition in equity was then filed. It alleged the making of the contracts, the construction and repair of the bridges in accordance therewith, the allowance of the claims and the issuance of warrants therefor, and the balance remaining due. The petition also alleges the right of plaintiff to recover upon *quantum meruit*. The prayer was for an accounting and for judgment for the amount found due, and for a determination of the validity of the warrants previously issued.

To this petition the three county commissioners who had been made parties filed an answer. It was in part as follows: "The defendants further allege that each of the several warrants set forth in plaintiff's petition were duly and properly issued by the proper officers of Stanton County, Nebraska in payment of services justly and lawfully rendered by said plaintiff; that prior to the issuance of the aforesaid warrants set forth in plaintiff's petition, there had been filed with the Board of County Commissioners of Stanton County, Nebraska, a properly verified bill for the amount of material and services rendered as set forth in plaintiff's petition. That said bills were duly allowed at the regular meeting of the said Board of County Commissioners; that no appeal was taken from the allowance of any of said claims and the aforesaid order of allowance still remains in full force and effect; and that the aforesaid warrants were duly and properly issued after the time for appeal had expired and are just and valid warrants and obligations of Stanton County, Nebraska; and that Stanton County is entitled to credit for the same upon the amount set forth in the aforesaid petition; that as to any balance claimed by the plaintiff after crediting the warrants described in the petition, the defendants are not advised and

therefore require plaintiff to make strict proof of the same." No evidence was taken by the trial court. Judgment was entered on the fifth claim for $75,168.43, which was subsequently paid in full. It contains a finding that the warrants issued, including those in the present suit, were valid obligations of the county. Neither the county commissioners, nor any one else for the county, pleaded any of the defenses now asserted by it as a defense to the fifth claim.

The evidence shows that in March, 1922, the taxpayers of the county became concerned about the large number of warrants that were being issued and interested themselves in the transactions. Meetings were held and pressure brought to bear upon the county commissioners to reduce the scope of their action in building and repairing bridges. Drake was present at some of these meetings on behalf of the Standard Bridge Company and at one of these meetings he offered to take back at the contract price any bridges that had been built which the county did not want. This resulted in an inspection of all bridges by a committee representing interested taxpayers and an agreement as to the bridges that were to be retained and paid for. It is evident that when this agreement was reached the parties to the litigation got together through their attorneys, formulated the pleadings as we have heretofore stated, and caused a judgment to be entered which was in accordance with the conclusions reached by the parties and the interested taxpayers. In other words, it was intended by all that the Standard Bridge Company should recover judgment in the manner and form in which they did recover it.

This is further borne out by undisputed facts in the record. The fifth claim was disallowed on September 16, 1922. On September 21, 1922, a notice of appeal was filed by Drake. On September 29, 1922, the "petition in equity" and answer of the county commissioners were verified. On September 30, 1922, the appeal was docketed and the petition and answer filed. On October 2, 1922, the judgment was entered without evidence being adduced. There is evi-

dence that Drake suggested to the county board that the fifth claim be rejected so that he might obtain a judgment against the county. The petition on appeal from the disallowance of the claim was for an accounting, for judgment for the amount due and for a determination of the validity of the warrants previously issued. The petition stated a cause of action on the warrants and one on a *quantum meruit* basis. We will not discuss the question whether such a petition can properly be filed on appeal from the disallowance of a claim by a county board. We will content ourselves with the statement that it was vulnerable to attack and that the allegations of validity of the warrants previously issued should have been stricken if objection had been made thereto. In other words, such allegations were injected into the litigation by consent or acquiescence. It is urged that county officers cannot so consent, either by stipulation or acquiescence, and thereby give validity to their unlawful acts as against the public interest. We think the evidence shows by the undisputed testimony that the judgment entered was one that all participating parties intended should be entered without a hearing upon the merits and that it was in effect a consent judgment. The answer of the members of the county board is conclusive evidence of that fact. The question posed is whether such a judgment constitutes a basis for a plea of *res adjudicata.*

The general rule with respect to domestic judgments is that they cannot be collaterally attacked or impeached by the parties for fraud or collusion not going to the jurisdiction and that consent judgments are as conclusive on collateral attack as judgments entered after a trial. There is, however, a recognized exception to this general rule. In cases involving public interests where the public was a party merely by representation, the persons represented may show fraud or collusion in obtaining the judgment. If the judgment was collusive or by the consent of an officer as to a matter with respect to which he had no authority to bind the public, and it was not a decision by the

court after a hearing on the merits, it does not afford a basis for a plea of *res adjudicata* as against the public interest involved. 1 Freeman, Judgments (5th ed.) p. 1100.

We think the present case clearly falls within the exception. The judgment pleaded as *res adjudicata* was not a judgment which was contested by the parties. The answer filed, the method employed in preparing and filing the pleadings on appeal, the entry of judgment within two days without any contest whatever, together with other evidences in the record that the judgment was rendered with the tacit consent of the members of the county board, convinces us that it was not one of those solemn adjudications which should be recognized as binding upon the parties and afford a basis for a plea of *res adjudicata*. The authorities generally sustain this position.

In a case very similar in nature the Iowa court said: "The contract for the seats was made by one Green, who was the agent of the plaintiffs in the sale of the seats. He knew when he made the sale that the contract was void. But it is wholly immaterial whether he knew the amount of the indebtedness or not. A party who becomes the creditor of a municipal corporation must, at his peril, take notice of the fact that its indebtedness is in excess of the constitutional limitation. * * *

" * * * We have said that there is no direct evidence of collusion between the plaintiffs and the directors; that is, the evidence does not show that the plaintiffs and the directors held a meeting, and made a compact or agreement that the plaintiffs should commence an action upon the illegal claim, and that the directors should make no appearance, and thus enable the plaintiffs to enforce a void obligation against the district. But fraud and collusion is not required to be shown by direct evidence. It may be proved by facts and circumstances, and, in our opinion, the evidence in this case shows that both of the parties to that action intended that the plaintiffs should recover judgment.

"Having found that the judgment was a fraud upon the district, the next question to be determined is, can the dis-

trict be relieved from the payment of the judgment? It is true as a general proposition, as claimed by counsel for appellant, that it cannot be said that the court did not have jurisdiction to render the judgment. It had jurisdiction of the subject-matter of the suit; that is, it had jurisdiction to render judgment on a money demand, and by the service of process it had jurisdiction of the parties; and if this were a judgment against a private person it may be that, under the facts, it should be held valid. But the school district is the real party. The directors are the trustees or managers of its affairs. The real parties in interest are the taxpayers of the district. It appears that these agents or officers of the district had attempted to involve it in debts to the amount of nearly fifty per cent. of the assessed valuation of its taxable property, and, to make these fraudulent obligations more binding, the directors deliberately and solemnly determined at a meeting of the board that they would not appear to the action, but allow judgment to be entered by default. An examination of the case of *Ind. Dist. v. Schreiner*, 46 Iowa, 172, will show some of the methods adopted by officers of a previous board in this same district. No question was made in that case that it was competent for the district to attack the judgment for fraud, and the judgment was set aside on that ground. In the case of *Kelly v. Town of Milan*, 127 U. S. 139, 8 Sup. Ct. Rep. 1101, the municipal authorities of a city brought suit to enjoin perpetually the collection of certain municipal bonds, on the ground that they were issued without authority of law. By consent of the parties, it was ordered that the preliminary injunction be dissolved, and the cause was disposed of by a compromise, by which it was agreed that the town, for a certain consideration, should let a decree be entered in favor of the validity of the bonds, and the decree was so entered. It was held that, as the bonds were invalid, the officers of the town had no greater power to agree to an entry of judgment declaring their validity than they had to issue the bonds originally, and that the judgment entered by consent did not estop the town, in a

subsequent action upon the bonds, from pleading the invalidity of their issue. Inasmuch as we have found that the facts in this case justify the finding that the judgment was rendered by the tacit consent of the members of the board then in office, the case above cited would appear to sustain us in holding that this judgment is not one of those solelm adjudications which should be recognized and binding upon the parties.

"It is to be remembered that, in every case determined by a court of last resort, it is important to consider the consequences which must necessarily follow the decision rendered. It is a matter of common knowledge in this state that many of our cities have contracted debts to the extent of the constitutional limitation; and in one city there was a time when its business was transacted under the restraint of an injunction forbidding the contracting of additional indebtedness. If we were to sanction judgments like the one obtained in this case, it would be a license to officers of municipal corporations to incur any indebtedness in any amount, and then allow judgments by default, and thus defeat and override the constitutional limitation. It is requiring rather too much vigilance on the part of the taxpayer to require him to be in attendance in the clerk's office, and in the courts, and upon the meetings of city councils, that he may know whether the indebtedness contracted is valid, and enjoin such actions." *Kane & Co. v. Independent School District of Rock Rapids,* 82 Ia. 5, 47 N. W. 1076.

In *Green v. Hutsonville Township High School District,* 356 Ill. 216, 190 N. E. 267, the court said: "Regardless of the general rule that a judgment cannot be collaterally attacked and that it is conclusive and final as between the parties, there is a further rule which has been repeatedly sustained in this court, and, so far as we know, in all other courts. That rule is, that whenever a judgment is procured through fraud and collusion for the purpose of defrauding some third person, such third person may show collaterally the fraud and collusion by which the judgment was obtained and escape the burdens and injuries thus

thrust upon`him. * * * It is further the rule that to constitute *res adjudicata* it must appear that the former adjudication was upon a matter contested between the parties. (*Wadhams v. Gay*, 73 Ill. 415.)   If a suit is devised for the purpose of having a certain judgment entered, it will not be binding upon the public or those who are not parties to the scheme adopted for that purpose. * * * A taxpayer is not estopped by a consent judgment upon an unlawful contract, (*People v. Illinois Central Railroad Co. supra,*)` neither can a legal liability be established by such a judgment."

In *Lawrence Mfg. Co. v. Janesville Cotton Mills,* 138 U. S. 552, 562, 11 S. Ct. 402, the court said:   "The prior decree was the consequence of the consent and not of the judgment of the court, and this being so, the court had the right to decline to treat it as *res adjudicata;* * * * ."

We are in accord with the principles expressed in the foregoing authorities and hold that the judgment obtained in the district court for Stanton county on appeal from a disallowance by the county board of the fifth claim can afford no basis for a plea of *res adjudicata* as against the public.   It seems to us that the county board can have no more power as against the public interest in validating warrants by consenting to, acquiescing in, or furthering the entry of a judgment than they had in approving the liability and issuing the warrants in the first instance.   If constitutional and statutory prohibitions could be evaded in this manner, they would in effect be completely nullified and constitute no restraint against the evils they were intended to correct.

We have examined all other assignments of error and find they are without merit.

We conclude that the trial court was in error in withdrawing the case from the consideration of the jury and rendering judgment in favor of the plaintiff.   It seems to us that the defendant was entitled to a peremptory instruction as to all the issues presented by this appeal.   Certain issues were reserved by agreement, pending the final dis-

position of this appeal. The judgment of the district court is therefore reversed and the cause remanded to the district court with instructions to adjudicate all issues reserved by the stipulation of the parties and to enter such a judgment as the facts and law justify in the light of this opinion.

REVERSED.

YEAGER, J., dissenting.

I find no difficulty in agreeing with the portion of the majority opinion dealing with the subjects of estoppel and *ultra vires* and I also concur in what has been said with regard to the effect of the judgment in the case of *State ex rel. Warren v. Raabe,* 140 Neb. 16, 299 N. W. 338, but from that point on I must respectfully dissent from the opinion of the majority.

I am firmly convinced that the judgment entered on October 2, 1922, on appeal from the action of the county board, referred to as a judgment on the fifth claim, is valid and binding, conclusive and *res judicata* upon all rights involved here except that of the statute of limitations, and that the statute of limitations is no defense to the action of plaintiff in the light of the annual levies of taxes made after the rendition of the judgment for the payment of the obligation thereof.

In September, 1922, after all or substantially all of the work was done and material furnished under all of the contracts, the Standard Bridge Company, predecessor in interest of the plaintiff herein, filed its claim, general in terms, with the county board for $95,298.43 with deductions which indicated that there was a balance due the claimant in the amount of $75,168.43. This claim was disallowed by the county board and from the action the Standard Bridge Company appealed to the district court.

In the appellate proceeding in the district court the Standard Bridge Company filed a petition wherein as the basis for the claim it set forth the letting of the contracts in question, the work and labor performed and material furnished thereunder, the various items of cost and charge, the payments received, the number and amount of war-

rants issued by the county and received by the claimant in payment and asked an accounting of all matters done and performed under the contracts, an adjudication of the validity of the claim and warrants, and alleged that the amount represented by the claim was the balance due after accounting on all of the contracts and prayed judgment for this balance.

To this petition the defendant here filed an answer the details of which I deem unnecessary to set forth.

The cause came on for trial in the district court and the court by its judgment made the accounting requested, found that of the warrants issued $119,637.23 had been paid, and that the county was entitled to a credit of $17,778.07 which was not given by the Standard Bridge Company, that the total credit due Stanton county on the contracts by payment in money, warrants and otherwise was $560,217.41, that the unpaid warrants, which included the warrants in suit here, were legal and binding obligations of the county, that after such accounting there was a balance due in the amount of $75,168.43, for which judgment was rendered.

It is this judgment that plaintiff insists is *res judicata* on the matter of the validity of the warrants sued upon in this action.

It may be stated here that the judgment in that case was never in the case itself, by appeal or application to set it aside, attacked. It may also be stated that in no independent action instituted for that purpose which has proceeded to final judgment has this judgment been directly attacked.

The attack of the defendant upon this judgment being collateral we are now called upon in this connection to determine but two questions. The questions are: Is there a jurisdictional infirmity which renders the judgment void? Is it in fact and in law an adjudication of the validity of the warrants?

As to the first question there is little controversy. The defendant does not seriously contend that the judgment is void. It appears to be conceded that there is a valid judgment for $75,168.43. As to the second it contends that the

findings with reference to the accounting, payments by money and warrants, credits and validity of warrants constituted no part of the adjudication.

The position of the plaintiff in this connection is that these findings were, and of necessity had to be, adjudicated in arriving at the judgment to which the Standard Bridge Company was entitled under the issues presented by the claim, as elaborated by the petition on which the case was presented to the district court, and that in consequence that judgment is *res judicata* here on the question of the validity of the warrants in suit.

The applicable rule with regard to collateral attack is that a judicial order or judgment is not subject to attack in a collateral proceeding unless affected by some jurisdictional infirmity. *Dryden v. Parrotte*, 61 Neb. 339, 85 N. W. 287; *Wharton v. Jackson*, 107 Neb. 288, 185 N. W. 428; *In re Estate of Kierstead*, 128 Neb. 654, 259 N. W. 740.

The applicable rule of the decisions of the court with regard to *res judicata* is that the doctrine includes not only the things which were determined in the former suit, but also any other matter properly involved which might have been determined therein. See *Orcutt v. McGinley*, 96 Neb. 619, 148 N. W. 586; *Shepard v. City of Friend*, 141 Neb. 866, 5 N. W. 2d 108; *Wightman v. City of Wayne*, 144 Neb. 871, 15 N. W. 2d 78.

The case of *Orcutt v. McGinley, supra,* contains the following statement which is peculiarly apropos here: "If one has a defense which he neglects to make, it is at his peril, * * * ." In the action before the county board and again on appeal to the district court Stanton county could have set up the invalidity of the contracts, the warrants and the claim. This it neglected to do. The peril of this neglect must fall upon the county.

It is substantially contended by defendant that there was a failure of evidence, in fact that there was no evidence adduced, in the district court in Standard Bridge Company v. Stanton County to sustain the finding of the court. Whether or not that was true is a matter foreign to the in-

quiry here. This is a collateral attack upon a judgment containing no jurisdictional infirmities. The rule which must be applied is that all presumptions are in favor of the regularity of the proceedings of courts of record when collaterally attacked, and where a decree or judgment contains the findings of a fact specially, which are pleaded in the petition, it must be presumed that sufficient evidence was submitted to the court to justify such findings. *Hilton v. Bachman,* 24 Neb. 490, 39 N. W. 419; *Chase v. Miles,* 43 Neb. 686, 62 N. W. 35; *Cizek v. Cizek,* 69 Neb. 797, 96 N. W. 657.

It follows that the judgment in the case of Standard Bridge Company v. Stanton County rendered in October, 1922, is *res judicata* on the question of the legality of the warrants in suit.

I desire now to direct attention to the textbook and the citations on which the majority opinion relies for support for its view that this judgment is subject to collateral attack. The first to which I shall call attention is the reference to 1 Freeman, Judgments (5th ed.) p. 1100. The rule of the opinion is not the rule of the text.

The rule of the opinion is the following: "If the judgment was collusive or by the consent of an officer as to a matter with respect to which he had no authority to bind the public, and it was not a decision by the court after a hearing on the merits, it does not afford a basis for a plea of *res adjudicata* as against the public interest involved."

The rule of the text is the following: "If the judgment was collusive or was by consent of an officer or taxpayer as to a matter with respect to which he had no authority to bind the public by such consent, and not a decision by the court after a hearing on the merits, it may be refused recognition as res judicata against the public interest involved. Hence if the decree shows that it was the result of a compromise by which the merits were not considered and adjudicated, it is not conclusive upon the public or persons represented."

The breadth of the departure of the rule of the majority

opinion from that of the text is readily discernible. It is clear that the rule of the text can have no application in a case unless the decree or judgment itself shows that it was the result of a compromise and that the case was not considered and adjudicated on its merits. That is not the situation here. The judgment here shows on its face a consideration and adjudication on the merits. The showing to the contrary is wholly collateral.

I call attention next to the case of *Kane & Co. v. Independent School District of Rock Rapids*, 82 Ia. 5, 47 N. W. 1076. This was an action to enforce payment upon bonds similar to the situation involved here. The answer was collateral but there was a cross-bill wherein there was equitable attack as distinguished from collateral attack in an action at law. The question of collateral attack is not directly determined therein.

The case of *Green v. Hutsonville Township High School District*, 356 Ill. 216, 190 N. E. 267, is not in point here. This case was an attack in equity by injunction.

The case of *Lawrence Mfg. Co. v. Janesville Cotton Mills*, 138 U. S. 552, 11 S. Ct. 402, is not beneficial in the determination of the questions involved in this case, and I may say that I find no fault with the quotation employed if it is considered in the light of the situation where it originated. In that case a party was seeking the benefit of a contract and a decree which called for the interpretation of rights under that decree, and the following from the opinion is sufficient to make clear that the case is not enlightening on the questions presented in this case: "This, in plaintiff's view, left that decree incomplete, and therefore it seeks in substance to have it pieced out and then enforced under the prayer for general relief. There is no prayer in the bill that the preliminary injunction be made perpetual, but that would result if plaintiff succeeded, by a decree under the general prayer, in subjecting this defendant to the operation of the prior decree. But where a party returns to a court of chancery to obtain its aid in executing a former decree, it is at the risk of opening up such decree as re-

spects the relief to be granted on the new bill."

The conclusion and decision of this court should be that the trial court did not err in withdrawing the case from the jury and rendering judgment in favor of the plaintiff. It was, however, in error in rejecting the contention of plaintiff that the judgment entered in October, 1922, in the case of Standard Bridge Company v. Stanton County was *res judicata* on the question of the legality of the warrants in suit, and in rendering judgment on the theory that defendant was estopped to assert the illegality of the warrants. The judgment in Standard Bridge Company v. Stanton County, having been *res judicata* in the matter indicated on the record presented, conclusively therefore the plaintiff was entitled to a judgment in the amount for which judgment was rendered. There was nothing to be passed upon by the jury.

CHAPPELL, J., concurs in the dissent.