MERVYN J. WARREN, APPELLANT, V. THE COUNTY OF STANTON, APPELLEE.

22 N. W. 2d 287
FILED MARCH 22, 1946. No. 31997.

Abbott, Dunlap & Abbott, Crofoot, Fraser, Connolly & Stryker, Gross, Crawford & Welch, and William H. Wright, for appellant.

Robert R. Moodie, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

CHAPPELL, J.

On July 31, 1941, an action in three causes of action was instituted in the district court for Stanton County, Nebraska, by the plaintiff against the defendant Stanton County. The first two causes of action were to recover judgment on 193 warrants issued by the county to the Standard Bridge Company and registered for nonpayment in the years 1921 and 1922. Plaintiff at the time of the commencement of the action was assignee of the warrants sued on. The third cause of action was in quantum meruit for the reasonable value of the material and services performed under the contracts which were the basis of the warrants sued on in the first two causes of action.

The case was called for trial and on motion of defendant trial on the third cause of action was postponed and trial was had on the first two causes of action. The court allowed a recovery in favor of the plaintiff and rendered judgment accordingly. From that judgment defendant appealed to this court. The appeal was disposed of by an opinion appearing as Warren v. County of Stanton, 145 Neb. 220, 15 N. W. 2d 757.

As disclosed by that opinion, in the years 1919, 1920, 1921, and 1922, floods, high water, and other causes required the replacement of many bridges in Stanton County. Thereupon the county entered into a number of "unit price" contracts for the construction and repair of a large number of bridges with one Robert Z. Drake, doing business as the Standard Bridge Company. The total contract price of the bridges constructed and repaired under the contracts thus made amounted to $617,607.77. During the period in which the work was done the county levied taxes for all bridge purposes in the amount of $140,594.84, and the amount col-

lected on these levies was paid on the indebtedness. In addition, a levy of $34,311.69 was made in 1921, for what was designated as "Old Indebtedness Fund." The money collected on this levy was also used largely for partial payments on the indebtedness created by the contracts.

During the progress of the work Drake presented five claims to the county board as follows: August 19, 1920, $104,137.23; June 22, 1921, $87,623.72; July 14, 1921, $180,-336.75; January 24, 1922, $150,341.64; and September 16, 1922, $95,168.43. The first four claims were allowed and the amounts due thereon for which there was no money in the treasury for payment were evidenced by warrants.

The fifth claim was disallowed and Drake appealed to the district court where judgment was entered thereon for $75,168.43. This judgment was subsequently paid in full. The action on the first two causes of action was to recover the amount due on the unpaid warrants given in payment of the first four claims.

The record showed that each year after the issuance and registration of the warrants against the Bridge Fund to and including 1938, levies were made and taxes collected for the payment of these warrants. In this manner all except 62 warrants in the amount of $77,765.90, including interest, were paid. Likewise, annual levies were made for the Old Indebtedness Fund to and including 1937 for payment of outstanding warrants on that fund. In this manner all except 131 warrants in the amount of $161,358.33, including interest, were paid. The judgment of the trial court against the county was for these amounts.

The contention of the county was that the action was barred by the statute of limitations, that the warrants sued upon were issued in violation and in excess of the power of the county to issue warrants, that the contracts upon which the claims were based and the warrants issued were ultra vires, that the warrants were issued in violation of section 5, article VIII, of the Constitution of Nebraska, and that the judgment of the district court in the former action on appeal from disallowance was res judicata of the

validity of the warrants. The contentions of the county were traversed by reply of the plaintiff.

In its disposition of the first two causes of action this court reversed the judgment of the district court and remanded the cause with directions as follows:

"We conclude that the trial court was in error in withdrawing the case from the consideration of the jury and rendering judgment in favor of the plaintiff. It seems to us that the defendant was entitled to a peremptory instruction as to all the issues presented by this appeal. Certain issues were reserved by agreement, pending the final disposition of this appeal. The judgment of the district court is therefore reversed and the cause remanded to the district court with instructions to adjudicate all issues reserved by the stipulation of the parties and to enter such a judgment as the facts and law justify in the light of this opinion."

In its opinion this court rejected the contentions of the county that the action was barred by the statute of limitations, that the issuance of the warrants was in the true sense ultra vires, and that judgment in a former action was res judicata of the validity of the warrants, and sustained the contention that the warrants were void for the reason that they were issued in excess of the power of the county to issue warrants and in violation of section 5, article VIII, of the Constitution of Nebraska.

The mandate of this court was issued and on motion of defendant a judgment was duly entered by the district court in conformity therewith and with the opinion on the first two causes of action.

In the same motion the defendant moved the court to adjudicate the issues in the third cause of action in the light of the opinion of this court on the first two causes of action and to enter judgment dismissing it with prejudice to future action.

The trial court sustained the motion and rendered a dismissal of the third cause of action with prejudice. It is from this judgment that plaintiff has appealed.

Preliminary to a consideration of the propriety of the

judgment on the third cause of action it may be well to state that the third cause of action represents the same subject matter as the first two. It claims a right of recovery on the basis of reasonable value of service performed and material furnished in an amount equal to the amount unpaid on the warrants which were the basis of the first two causes of action. The common identity of the first two causes of action with the third is made clear by paragraphs five and six of the third cause of action.

The only question for determination in this case is that of whether or not the judgment and the findings and conclusions in the opinion on the first two causes of action and the direction thereof were a proper basis for the dismissal with prejudice of the third cause of action. Specifically since plaintiff is prohibited from a recovery on the warrants it becomes necessary to say whether or not he is also prohibited from recovering on the basis of quantum meruit.

The constitutional and statutory provisions necessary to be considered in a disposition of the issues involved are:

Constitution of Nebraska, art. VIII, § 5: "County authorities shall never assess taxes the aggregate of which shall exceed fifty cents per one hundred dollars actual valuation as determined by the assessment rolls, except for the payment of indebtedness existing at the adoption hereof, unless authorized by a vote of the people of the county."

Comp. St. 1929, § 26-116: "It shall be unlawful for the county board of any county in this state to issue any warrants for any amount exceeding the aggregate of eighty-five per cent of the amount levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same; nor shall it be lawful for the county board to issue any certificate of indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness against the county in excess of the tax levy for county ex-

pense during the current year; nor shall any expenditure be made, or indebtedness be contracted to be paid out of any of the funds of said county in excess of the amount levied for said fund."

Comp. St. 1929, § 26-117: "Each warrant shall specify the amount levied and appropiated to the fund upon which it is drawn, and the amount already expended of such fund."

Comp. St. 1929, § 26-118: "Any warrant drawn after eighty-five per cent of the amount levied for the year is exhausted, and where there are no funds in the treasury for the payment of the same, shall not be chargeable as against the county, but may be collected by civil action from the county board making the same, or any member thereof."

It was on an interpretation and application of these provisions that it was held in Warren v. County of Stanton, *supra*, that plaintiff was not entitled to recover on the warrants. It is likewise on their interpretation and application that the rights of the parties in the action here must depend.

The question of the right of a party, having contracted with a county or municipality, to recover in quantum meruit for service, material, and equipment furnished where recovery in action on the contract was involved because of illegality of the contract on account of constitutional or statutory inhibition has often been before this court. On the question presented here some of the cases are in real or apparent conflict. It therefore appears to be necessary to examine them and out of the examination to make a statement which shall make clear the effect and purpose of the constitutional and statutory provisions involved to the end that counties and persons dealing with them may deal in certainty and not in confusion.

We start with Lincoln Land Co. v. Village of Grant, 57 Neb. 70, 77 N. W. 349. There were earlier cases but reference is had to them in this and the later cases which will be reviewed, hence we deem it unnecessary to men-

tion them.

In 1889, the board of trustees of the village of Grant adopted an ordinance authorizing the Lincoln Land Company to construct and maintain a system of waterworks in the village. The ordinance provided that the Lincoln Land Company should furnish free 15 hydrants for four and one-half years and for the next twenty and one-half years receive from the village an annual rental of $60 each for not less than 15 hydrants. After rentals became due under the terms of the ordinance the village refused to pay, claiming that the ordinance was void under the following terms of section 89, article 1, chapter 14, of the then Compiled Statutes (1887) : "No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided."

Payment under the terms of the ordinance was prohibited by this statutory provision. Following a number of citations it was said in the opinion: "The foregoing authorities sufficiently establish the right of the plaintiff to recover in this case the value of the use of the fifteen fire hydrants."

It is indicated, but not too clearly, that the right to recover quantum meruit depended upon the fact that the village was empowered to make the contract in question but exercised that power in an unlawful manner, rendering the contract void and incapable of enforcement.

The case of Rogers v. City of Omaha, 76 Neb. 187, 107 N. W. 214, and on rehearing, 80 Neb. 591, 114 N. W. 833, is a case where Rogers sued in quantum meruit for the balance due on warrants which were illegal. This court reversed a judgment in favor of the city and remanded the cause. In the opinion on the first appearance of the

case it is said: "There is a clear distinction between contracts outside of the powers conferred upon municipal corporations and contracts within the general scope of the powers conferred, but which have been irregularly exercised. Contracts falling entirely outside of the powers delegated to the corporation are absolutely null and void, and no right of action against the corporation can be founded up on them. The rule with reference to the liability of the corporation on contracts within the general scope of the powers granted, but which have been irregularly exercised, is well stated in 2 Dillon, Municipal Corporations (4th ed.), § 936, as follows: 'A municipal corporation as against persons who have acted in good faith and parted with value for its benefit, cannot, * * * set up mere irregularities in the exercise of power conferred; as, for example, its failure to make publication in all of the required newspapers of a resolution involving the expenditure of moneys. Such failure might have the effect to invalidate a local assessment upon the abutter, * * * but as regards a *bona fide contractor with the city*, who had expended money for its benefit in respect of a matter within the scope of its general powers, the contract would not be *ultra vires* in the true sense of that term; and the city would be estopped to set up as a defense its own irregularities in the exercise of a power clearly granted to it.'"

On the second appearance of the case the rule of the first opinion was reiterated.

In the case of Nebraska Bitulithic Co. v. City of Omaha, 84 Neb. 375, 121 N. W. 443, this court approved a recovery on quantum meruit for the use of an asphalt plant. In the opinion it was held that the decision was controlled by the following which was quoted from Cathers v. Moores, 78 Neb. 17, 113 N. W. 119, 14 L. R. A. N. S. 302: "Here we have a case where the city had the power to contract with persons to keep its streets clean and in proper repair. It also had the power to pay for the services rendered under such a contract, and while it may be said that its authority was so irregularly exercised as to render the proceedings

illegal, still there was not an entire lack of power to perform the acts complained of."

The case of Nebraska Telephone Co. v. City of Red Cloud, 94 Neb. 6, 142 N. W. 534, is one wherein a recovery was allowed in quantum meruit for a balance due under a contract void for irregularity. In the opinion it was said: "It is somewhat difficult to reconcile the cases in this and other courts, but the pivotal point under our former decisions seems to be whether the city had the general power to make such a contract. If it had no such power, its acts are *ultra vires* and void, and the rule of the cases cited by defendant applies with full force. If it had the power, but the manner of its exercise was irregular or defective, and the city accepts, makes no offer to return, and still retains property obtained by virtue of the irregular proceedings, it is bound, both morally and legally, to pay the reasonable value thereof, not under the void contract, but by way of compensation."

O'Neill v. City of South Omaha, 102 Neb. 836, 170 N. W. 174, was an action for recovery in quantum meruit on an illegal grading contract. In speaking to the question it was said in the opinion: "The city had power in good faith to enter into a contract of this nature. The right of recovery where the city, under a contract entered into in good faith, but which is void for the lack of statutory requirements, has accepted and still retains the benefit of it, has been established by *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, * * * ."

Stickel Lumber Co. v. City of Kearney, 103 Neb. 636, 173 N. W. 595, is a case in which plaintiff was permitted to recover on quantum meruit for certain iron pipe furnished to the city under an illegal contract. In the opinion it is stated:

"The council of a city of the second class having over 5,000 inhabitants cannot lawfully incur expenses or enter into a contract therefor of this nature and extent unless money has been previously appropriated for that purpose, or the expenditures previously sanctioned by a majority of

the electors of the city * * * .

"But even though the statutory requirements as to the making of a contract have not been carried out, if the city authorities are vested with general authority to do the act for the performance of which the materials are supplied, and there are no elements of other than fair dealing shown, and the city elects to keep the property, there may still be a recovery for the reasonable value of the same."

The case of Hustead v. Richardson County, 104 Neb. 27, 175 N. W. 648, is one wherein a physician brought action to recover on a contract for service as a county physician. In disposing of the case the court said: "It has frequently been decided in this state that, even if the county board has exceeded its powers in entering into a contract under which the services were rendered, still the county would be liable for valuable benefits received by it under the contract for which the county would be liable under a valid contract."

The case of Omaha Road Equipment Co. v. Thurston County, 122 Neb. 35, 238 N. W. 919, was an action to recover the balance of $11,838.50 due on the purchase price of road equipment and machinery delivered on three occasions between March 28, 1927, and August 9, 1927. Apparently there was no formal contract of purchase. The county defended on the ground, among others, that at the time of the purchase the amount of money on hand in the county treasury was less than the amount due on the machinery and that the annual estimate and appropriation of the board for the year 1927 was insufficient to pay for the material, and that the contracts under which the machinery is alleged to have been purchased were void as an attempt to bind the county to the payment of installments out of future levies.

On these factual questions the finding was adverse to the contention of the county.

After reviewing a number of cases from other jurisdictions, but none from Nebraska, the court said: "In the present case the county is liable for the reasonable value of

the road machinery which it purchased, retained, and used, where the county was clothed with power to purchase such machinery, notwithstanding the fact that the contract of purchase is unenforceable because the power was irregularly exercised."

The case of Scheschy v. Binkley, 124 Neb. 87, 245 N. W. 267, was an action in equity by a citizen and taxpayer to recover back from certain former officers of a school district moneys received by them for service under illegal contracts of employment. The court in denying a recovery quoted with approval the following from Hustead v. Richardson County, *supra*: "'When valuable services are rendered a county under a void contract, the county will be liable for the value of the benefits so received if the county board could have made a valid contract for such services.'"

The case of Tidd v. Kirkham, 124 Neb. 605, 247 N. W. 594, was an action by a taxpayer to enjoin the city treasurer of the city of Plattsmouth from paying certain city warrants and to have them declared void on the ground that they were issued in payment of a void contract for the construction of a viaduct and for grading and graveling a highway.

The relief prayed was denied. The court said: "The city had legal power to contract and pay for such improvements." Further in the opinion it was said: "Much the same principle was involved in the recent case of *Omaha Road Equipment Co. v. Thurston County*, 122 Neb. 35. The county had power to purchase road machinery but did so by an irregular exercise of that power which made the contract unenforceable. Instead of returning the machinery it retained and used it. In line with the authorities we decided that the county was liable for the reasonable value of the machinery."

Western Chemical Co. v. Board of County Commissioners, 130 Neb. 550, 264 N. W. 699, is a case wherein the county was sued for disinfectants and other chemicals which had been purchased on orders signed by one of the commissioners. In disposing of the case favorably to the

plaintiff this court said: "There is no question that the board of county commissioners had the power to purchase the merchandise in question. The county subsequently received and used it. It has, by using the merchandise, placed itself where a return of the goods cannot be had. The defendant county cannot retain the merchandise and use it for the benefit of the public and still defeat a claim for its reasonable value, notwithstanding the fact that the contract of purchase was unenforceable because the power was irregularly exercised."

Nebraska State Bank Liquidation Ass'n v. Village of Burton, 134 Neb. 623, 279 N. W. 319, was an action for the recovery of the balance due on a city warrant. By the amended petition the action was changed to one for money had and received. The defense according to the opinion was the statute of limitations. It was held that the action was barred. In arriving at that conclusion it became necessary to determine the time when the statute began to run against an obligation represented by an invalid warrant. The court in arriving at that conclusion said: "Where a municipal corporation receives money or property of another under and pursuant to a contract upon a subject within its corporate powers, which contract was entered into in good faith and without purpose to violate or evade the law, but for the failure to comply with the requirements of statutes made essential to a valid contract such contract was illegal and void, but the money or property so received is retained and subsequently devoted to legitimate municipal purposes, the municipality is liable therefor, and recovery may be had against it as upon an implied contract."

Harms v. School District, 139 Neb. 714, 298 N. W. 549, was an action in quantum meruit for partially erecting a school building. In allowing a recovery and in passing upon the regularity of contract the court said: "There are several sections of the statutes giving general power to school districts to build schoolhouses. Having general power, the action of the school authorities was not *ultra*

*vires.* It may have been illegal or without authority, but under the doctrine announced in the cases cited by appellant, we think that it no doubt was within the power granted to the school district by the legislature."

. The case of Darnell v. City of Broken Bow, 139 Neb. 844, 299 N. W. 274, was an action by a taxpayer to avoid a contract for fees entered into between an attorney and the city. In upholding a right of the attorney to recover in quantum meruit the court said: "In such a case, even though the contract of employment of the attorney, because of provisions therein contained, be void so that no recovery at law may be had thereon, still such attorney, in a proper action, is entitled to be paid on a *quantum meruit* basis for lawful services rendered by him."

This review of the decisions makes clear that it is the rule in this jurisdiction that where a contract has been entered into in good faith with a county which contract was within the power of the county to make but was void for the reason that statutory or constitutional requirements were not complied with, an action in quantum meruit for the service performed or the material furnished may be maintained.

In the opinion in Warren v. County of Stanton, *supra,* it was said: "It is established beyond question that the constitutional provision cited and the provisions of sections 26-116 and 26-118, Comp. St. 1929, were violated when the warrants sued upon were issued. The warrants on their face evidenced the fact that sections 26-116 and 26-118 were violated at the time of their issuance." Further it was said: "We necessarily conclude that the warrants in suit are absolutely void, whether the liability was incurred under the emergency powers of the county board or otherwise, and being nonnegotiable instruments, an assignee acquires them subject to all defenses which were available against the original payee."

The appellant, accepting the decision in Warren v. County of Stanton, *supra,* as he must of course, contends that the decision therein that the warrants were void is not

binding in this action since the service and materials were furnished in good faith and retained by the county and that the contracts were for service and material within a field wherein the county had the power to contract. He contends that where a county, if it has power to contract with reference to a particular subject matter, enters into a contract which is void either because of failure to comply with some formal requirement or because the contract is in excess of constitutional or statutory limitation, a recovery may be had in quantum meruit.

It may be well to interpolate here that the county paid on the illegal contracts amounts in excess of what it could legally contract for, and the action on the warrants was, and the action here is, for further excessive amounts.

The contention is not without indirect if not direct support in some of the decisions we have reviewed. At least the cases wherein "ultra vires" was interposed as a defense lend support to this view. Also by indirection the case involving hydrant rental for future years lends support. Lincoln Land Co. v. Village of Grant, *supra.*

However in none of them, except the hydrant rental case, is there a clear indication that the amount sought to be recovered on quantum meruit was in excess of an amount for which a valid contract could have been entered into.

We do not feel in the light of this that authoritative or binding precedent exists in this jurisdiction for a determination of the important question in this case. It therefore becomes necessary to ascertain and announce a rule which will, in the light of reason and sound judgment, give effect to the constitutional will and the legislative intent in the promulgation and adoption of the restrictions imposed on the power of counties to contract and to bind the county.

From a reading of the provisions there can be no doubt that when the restrictions were imposed it was the intent and purpose that not only a contract in contravention thereof should be unenforceable but also any obligation of any other character should likewise be unenforceable. The tenor of the provisions is incapable of any other interpreta-

tion.

This court on grounds of equity has transcended the effect thereof and has said that notwithstanding the absence of a right of recovery on contract, on account of illegality thereof, one is allowable in quantum meruit where the subject matter was one which was a proper subject of contract, if service was performed or material or equipment furnished in good faith. We do not now choose to depart from this rule but on the other hand we cannot accept it without what we deem reasonable reservation and restriction.

We cannot feel that this court should say at this time or that it has in the past intended to say more than that the right of recovery in quantum meruit exists up to the limit, and not beyond, of what would have been recoverable under a valid contract covering the same subject matter. Any other interpretation would be to say that the courts by judicial fiat have power to set aside and render for naught the will of the people as expressed in the Constitution and the intent of the Legislature as expressed in its solemn enactments. Any other interpretation would be to say that a court of law by the employment of equitable principle has power to breathe legality into that which the Constitution and statutes not only do not recognize as legal but specifically declare to be illegal and void. Equity has never been an instrument of law violation. Instead it enters the field to follow and not to destroy the law. One of the fundamental maxims of equity jurisprudence is that "Equity follows the law."

We point out that this is an action at law and not in equity. The same is true of the cases reviewed from which we are drawing aid in the decision of this case. It was, however, by the application of equitable principles to law actions that in the cases referred to, recovery in quantum meruit was allowed.

The contention made that this interpretation works a hardship and is offensive to a sense of justice is not without its appeal, but it must be remembered that those deal-

ing with a county are presumed to know, and in fact may readily examine and find out, the restrictions and limitations under which the right of contract may be exercised by it, and the fiscal condition is a matter of public record. Therefore, the failure to know the law and the true financial condition of a county is not a matter which the court has a right to consider in circumstances such as are presented by this case.

We observe no difference in principle between the prohibition of the statute here in question and the prohibitory principle involved in the case of Neisius v. Henry, 142 Neb. 29, 5 N. W. 2d 291. In dealing with the prohibition there it was said: "There is much distinction between a contract with a city which is the result of an illegal exercise of an authorized power and one which is illegal because of a statutory disqualification to make a contract, or to create liability. The former may be ratified or a suit *quantum meruit* maintained. But where one is prohibited by statute from entering into a contract, and the obligation of the contract avoided for so doing, an action *quantum meruit* cannot be maintained."

The only distinction to be observed is that in that case the contract was illegal and void for the reason that the subject matter under pertinent provisions of the statute was not a proper subject of contract whereas here the contracts were void but up to a certain point the subject matter was a proper subject of contract but beyond that point contracts in relation thereto were prohibited and were illegal to the extent of the excess over the prohibition. Should the prohibited portion of the contracts in this case receive more favorable treatment at the hands of the court than a contract that is entirely prohibited? We think not.

It is remembered that the subject matter of recovery sought under the third cause of action is the same as was the subject matter of the first two causes of action and that by Warren v. County of Stanton, *supra*, it was held that no recovery could be had. It therefore follows that on the same theory that recovery was denied in Neisius v. Henry,

*supra,* it must also be denied here.

We hold, therefore, that on the record and in the light of the opinion in Warren v. County of Stanton, *supra,* the motion to dismiss the third cause of action with prejudice was properly sustained.

The judgment of the district court is affirmed.

AFFIRMED.

PAINE, J., participating on briefs.